IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUISE B. SAAVEDRA and
ROBERT SAAVEDRA,

       Plaintiffs,

vs.                                  No. CIV 09-1218 JB/WPL

LOWE'S HOME CENTERS, INC.,
and LUCY BURROWS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Lucy Burrows' Memorandum Motion to Dismiss All Claims, filed April 29, 2010 (Doc. 9)("Motion"). The Court held a hearing on July 8, 2010. The primary issues are: (i) whether the Court should dismiss Plaintiffs Louise B. Saavedra's and Robert Saavedra's Americans with Disabilities Act, 42 U.S.C. §§ 12201-12213 ("ADA"), claim against Defendant Lucy Burrows because the ADA precludes personal capacity suits against individual supervisors or other employees; (ii) whether the Court should dismiss the Plaintiffs' New Mexico Human Rights Act, NMSA 1978 §§ 28-1-1 to 28-1-15 ("NMHRA"), claim against Burrows because L. Saavedra did not exhaust her administrative remedies under the NMHRA; (iii) whether the Court should dismiss the Plaintiffs' claim for retaliatory discharge under New Mexico common law because Burrows was acting within the scope of her employment; (iv) whether Plaintiff R. Saavedra, L. Saavedra's husband, has stated a claim upon which relief can be granted against Burrows under the Family Medical Leave Act, 29 U.S.C. §2601 through §2654 ("FMLA"); (v) whether the Court should dismiss L. Saavedra's claim against Burrows under the FMLA because the Plaintiffs failed to plead sufficient facts to

demonstrate that Burrows qualifies as an "employer" under the FMLA; and (vi) whether the Court should dismiss the Plaintiffs' punitive damages claims.  Because the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition, the Court will dismiss the Plaintiffs' ADA claim against Burrows.  Because the Plaintiffs failed to exhaust the administrative remedies with the Human Rights Bureau of the New Mexico Department of Workforce Solutions ("NMHRD"), the Court will dismiss the NMHRA claims against Burrows.  Because Burrows was not acting outside the scope of her employment, the Court will dismiss the claim for retaliatory discharge.  Because the Plaintiffs do not plead facts regarding R. Saavedra's employment relationship with Burrows, the Court will dismiss his FMLA claim against Burrows.  Because the FMLA provides for individual liability in certain situations, and the Plaintiffs have pled sufficient facts to demonstrate that Burrows qualifies as an "employer" under the FMLA, the Court will deny the motion to dismiss L. Saavedra's FMLA claim against Burrows.  Finally, because the FMLA does not entitle the Plaintiffs to punitive damages, the Court will dismiss the claim for punitive damages as asserted against Burrows.  The Court therefore will grant the motion to dismiss in part and deny it in part.

## FACTUAL BACKGROUND

For the purposes of a rule 12(b)(6) motion to dismiss, the Court assumes the Plaintiffs' well-pleaded factual allegations are true.  According to the allegations in the Complaint, on or about April 27, 2007, L. Saavedra began working as a cashier at Lowe's Home Improvement Store No. 1543, located in Albuquerque, New Mexico.  See Complaint for Wrongful Termination of Employment as the Result of Disability Discrimination in Violation of the Americans With Disabilities Act and the New Mexico Human Rights Act, For Retaliation Contrary to the Families [sic] and Medical Leave Act, For New Mexico Common Law Tort, and For Common Law Tort,

and For Punitive Damages ¶ 13, at 4, filed March 23, 2010 (Doc. 5)("Complaint").  Burrows "was employed in a managerial capacity" by Defendant Lowe's Home Centers (Lowe's). See Complaint ¶ 4, at 2.  On April 11, 2008, L. Saavedra was scheduled to work from 1:30 p.m. until 10:30 p.m., but after working for approximately two hours, she began to experience stomach discomfort, chest pain, shortness of breath, and a severe headache.  See Complaint ¶ 14, at 4. L. Saavedra approached store management and asked to be allowed to go home, but her request for emergency leave was denied.  See id.  When a co-worker arrived, L. Saavedra was allowed to take her lunch break.  See id. ¶ 15, at 5.  She went outside and sat in her vehicle, then drove herself to the hospital.  See id.  She was diagnosed with a Transient Ischemic Attack ("TIA"), commonly known as a "mini stroke," and was hospitalized.  Id. ¶ 15, at 5.  L. Saavedra was released from the hospital on Saturday, April 12, 2008, and was scheduled to report back to work for seven continuous days, beginning on Monday, April 14, 2008.  See id. ¶ 16-17, at 5.  On April 16, 2008, before her scheduled work hours, L. Saavedra met with her doctor, Dr. Wagnel-Mogl, who determined that L. Saavedra needed additional medical testing.  See id. ¶ 18, at 5.  After conducting further tests on L. Saavedra's next scheduled days off, Dr. Wagnel-Mogl directed that she should stop working, pending treatment of her medical condition.  See id.  The Plaintiffs allege that L. Saavedra's medical condition required her to take leave under the FMLA and that Lowe's placed her on FMLA leave for twelve consecutive weeks, during which time her condition worsened because she developed severe depression.  See id. ¶ 19, at 5-6.  "Before [L. Saavedra's] twelve weeks of FMLA had expired, Burrows changed Ms. Saavedra's leave status from FMLA leave to personal leave. Ms. Burrows gave no explanation for this action."  Complaint ¶ 20, at 6.  "In late July of 2008, [L. Saavedra] was released by her doctor to return to work.  [L. Saavedra], however, was given a doctor's release note with an erroneous date of 2007, which Defendant Burrows refused to accept."

Id. ¶ 21, at 6.  L. Saavedra returned to her doctor to obtain a corrected release note to return to work, but she was informed that her doctor was on vacation and that no other doctor would execute a new release.  See id. ¶ 22, at 6.  "[L.] Saavedra informed Defendant Burrows on July 28, 2008, that she could not immediately obtain a corrected medical release because her doctor was on vacation.  Upon being informed of this, Burrows stated to [L. Saavedra] that her employment was terminated."  Id. ¶ 23, at 6.

On August 1, 2008, R. Saavedra, was terminated from his employment at Lowe's "for assisting his wife . . . as she struggled with her disability condition."  Id. ¶ 24, at 6.  L. Saavedra filed timely complaints of prohibited discrimination through the United States Equal Employment Opportunity Commission ("EEOC") and through the NMHRD.  Id. ¶ 25, at 6-7.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their Complaint against the Defendants on December 30, 2009, asserting five claims: (i) violation of the ADA; (ii) violation of the NMHRA; (iii) violation of the FMLA; (iv) retaliatory discharge; and (v) punitive damages.  See Complaint ¶¶ 28-41, at 7-9.  R. Saavedra brings claims solely under the FMLA and under New Mexico common law.

On April 29, 2010, Lowe's filed an Answer, admitting that it employed L. Saavedra but denying that Burrows employed her.  See Answer of Defendant Lowe's Home Centers ¶ 1, at 5-6, filed April 29, 2010 (Doc. 8).  On April 29, 2010, Burrows moved, pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the claim of discrimination under the NMHRA, arguing that L. Saavedra did not name her in the charge of discrimination which she filed with the NMHRD and that she therefore failed to exhaust her administrative remedies as the NMHRA requires.  See Motion at 4-5.  Burrows also moved, pursuant to rule 12(b)(6), to dismiss the claim under the ADA, the claim for retaliatory discharge and the claim for punitive damages.  See Motion at 1.  She

argues that the United States Court of Appeals for the Tenth Circuit has long held that individual liability is not available under the ADA.  <u>See</u> Motion at 3.  Burrows also argues that there is no individual liability under the FMLA and that "individuals cannot be held liable as employers unless they fit the definition of employer under the [statute]."  Motion at 3-4 (citing <u>Isaacowitz v. Dialysis Clinic Inc.</u>, No. CIV-09-638 JCH/RHS, Memorandum Opinion and Order, at 11-12 (D.N.M. Feb. 22, 2010)(Herrera, J.)).  She contends that the Court should dismiss the Plaintiffs' claims under the FMLA because they did not allege that Burrows qualified as their employer under the FMLA.  <u>See</u> Motion at 4.  Burrows also argues that she is not liable under the NMHRA, because Saavedra did not name her in the Charge of Discrimination, which she filed against Lowe's with the New Mexico Department of Labor.  <u>See</u> Motion at 4.  Burrows contends that she cannot be held individually liable for wrongful discharge under New Mexico common law.  <u>See</u> <u>id.</u> at 6.  Finally, Burrows argues that, because the Plaintiffs have no entitlement to recover under their substantive causes of action, the Court should deny the punitive damages claim.  <u>See</u> <u>id.</u> at 7.

In response, the Plaintiffs "concede that they have no claims against Burrows individually under [sic] Americans With Disabilities Act or the New Mexico Human Rights Act."  Response to Motion to Dismiss at 7, filed May 16, 2010(Doc. 11)("Response").  The Plaintiffs argue that individual liability exists under the FMLA and that, because Burrows exercised supervisory control over the Plaintiffs' employment, <u>see</u> Response at 7, she meets the FMLA's definition of "employer," which includes: ". . . any person who acts directly or indirectly, in the interest of an employer to any of the employees of such employer . . ."  Response at 2 (quoting 9 U.S.C. § 2611(4)(A)(i)-(iv)).  The Plaintiffs did not respond to Burrows' argument that they have no claims for retaliatory discharge or for punitive damages.

In reply, Burrows argues that individuals can be liable under the FMLA only if they have

direct supervisory authority to hire and to fire the FMLA-protected employee.  See Lucy Burrows Reply in Support of Motion to Dismiss All Claims at 2, filed June 2, 2010 (Doc. 13)("Reply").  She further argues that the allegations in the Complaint are insufficient, as a matter of law, to establish that she was a supervisory employee with authority to hire or fire L. Saavedra.  See Reply at 4.

At the hearing, the Court noted that the Plaintiffs had not responded to Burrows' arguments in favor of dismissing Count IV -- the claim for individual liability for the tort of wrongful discharge -- and Count V -- the claim for punitive damages -- and inquired whether Dennis Montoya, the Plaintiffs' attorney, intended to concede the two claims.  See Transcript of Hearing at 2:20-3:5 (taken July 8, 2010)("Tr.").[1]  Mr. Montoya stated that the Court should dismiss Counts IV and V. See Tr. at 2:20-3:6 (Court, Montoya).  The Court also inquired whether Mr. Montoya would oppose dismissing R. Saavedra's claims against Burrows, and Mr. Montoya stated that he was not opposed to dismissing those claims given that R. Saavedra did not qualify as an employee of Burrows. See Tr. at 13:9-22 (Court, Montoya).

Lisa Mann, Burrows' attorney, noted that the Tenth Circuit has not ruled whether individuals may be held liable under the FMLA.  See Tr. at 3:16-4:8 (Mann).  She argued that, even if individual liability exists under the statute, the allegations in the Plaintiffs' Complaint fail to allege that Burrows qualified as an employer under the FMLA.  See Tr. at 3:16-4:8 (Mann).  Ms. Mann conceded that a majority of courts have found that there is individual liability for employees, acting directly or indirectly in the interest of an employer, using the definition of employer as defined in the Fair Labor Standards Act, 29 U.S.C. § 201 through § 219 ("FLSA").  See Tr. at 4:15-25 (Court, Mann).  Ms. Mann argued, however, that courts have not found individual liability in cases

_____

[1] The Court's citations to the transcript of the hearing are to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-6-

where employees are supervisors in name only, and that conclusory allegations that an individual defendant simply acted for the employer or within the scope of their employment are insufficient. See Tr. at 5:16-23 (Mann).  Mr. Montoya argued that, although not every employee of Lowe's would be subject to FMLA liability, Burrows "direct[ed] [and] controll[ed] the action that is clearly an adverse employment action."  Tr. at 9:25-10:1 (Montoya).  Mr. Montoya further argued that Burrows "at the very minimum acted in the interests of her employer Lowe's because she is a human resources officer," and is therefore subject to liability under the FMLA "even if she was limited to the role of messenger."  Tr. at 8:17-9:1 (Montoya).

At the hearing, the Court granted the parties leave to file supplemental briefing on the issue of individual liability under the FMLA.  On June 16, 2010, Burrows filed a supplemental brief. See Supplemental Brief on Definition of "Employer" Under FLSA, filed June 16, 2010 (Doc. 19) ("Burrows' Supp.").  Burrows argues that the Tenth Circuit has adopted the "economic reality" test to determine whether an employee is an "employer" under the Employee Polygraph Protection Act, 29 U.S.C. § 2001-2009 ("EPPA"), a statute that defines employer using the same language as the FLSA.  Burrows' Supp. at 2.  Burrows further argues that the test includes a number of factors, including the power to hire and fire employees, to exert control over work schedules, to dictate rate and method of payment, and to control employment records.  See Burrows' Supp. at 2.  Burrows contends that courts examining individual liability under the FLSA have dismissed claims against individuals where it is not alleged that the defendants are corporate officers, or managerial or supervisory employees over the Plaintiffs.  See Burrows' Supp. at 4.  The Plaintiffs filed a Supplemental Memorandum In Response to Motion to Dismiss By Defendant Lucy Burrows, filed June 19, 2010 (Doc. 20)("Pl. Supp."), arguing that the facts pled in the Complaint align with the factors a court would consider in applying the economic-realities test.  See Pl. Supp. at 6.  The

Plaintiffs argue that the relevant considerations include whether Burrows had the power to fire employees, whether she was in a supervisory position in charge of FMLA matters, whether she had the power to change FMLA leave to unpaid leave, whether she determined eligibility for medical leave, and whether she maintained FMLA records.  See Pl. Supp. at 6.  They argue that the Complaint alleges that Burrows was a supervisor in charge of FMLA matters, that she fired L. Saavedra because of alleged FMLA violations, and that she had the power to demand corrected documents before allowing L. Saavedra to return to work.  See Pl. Supp. at 6.  Given these allegations, the Plaintiffs contend that Burrows was an employer under the statutory definition. See Pl. Supp. at 6.

### STANDARD FOR DECIDING A MOTION TO DISMISS UNDER RULE 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  The party invoking federal jurisdiction bears the burden of establishing its existence.  See Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002), cert. denied, 538 U.S. 999 (2003).  These two forms of attack differ.

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981).  But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a rule 56 motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9

(D. N.M. Mar. 11, 2009)(Browning, J.).  As the United States Court of Appeals for the Fifth Circuit

has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very
> power to hear the case -- there is substantial authority that the trial court is free to
> weigh the evidence and satisfy itself as to the existence of its power to hear the case.
> In short, no presumptive truthfulness attaches to plaintiff's allegations, and the
> existence of disputed material facts will not preclude the trial court from evaluating
> for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortenson v. First Fed. Sav. & Loan Ass'n.,

549 F.2d 884, 891 (3d Cir. 1977)).

### STANDARD FOR DECIDING A MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which

it can grant relief.  Under rule 12(b)(6), a motion to dismiss "admits all well-pleaded facts in the

complaint as distinguished from conclusory allegations."  Mitchell v. King, 537 F.2d 385, 386

(10th Cir. 1976)(citing Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969)).  When ruling on a motion

to dismiss, the court must accept as true well-pleaded factual allegations, but also consider whether

"they plausibly give rise to an entitlement to relief."  Barrett v. Orman, No. 10-7000, 2010 U.S. App.

LEXIS 7807, at *5 (10th Cir. Apr. 15, 2010)(quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

(2009).  It is not the court's role to weigh potential evidence that the parties might present a trial,

but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which

the court can grant relief.  See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236

(10th Cir. 1999).  A court may not grant the motion because it believes it is unlikely the plaintiff can

prove the allegations.  See Robbins v. Oklahoma, 519 F.3d 1242, 1246 (10th Cir. 2008).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual

allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. at 1949 (internal alterations, citations, and quotations omitted). See Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010)("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949). Dismissal is not appropriate, however, where the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 570.

        "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56 (internal citation omitted). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 547)(alterations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. at 1949. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original). The court is not required to accept the conclusions of law or asserted application of law to the alleged facts. See Hackford v. Babbitt, 14 F.3d 1457, 1465

(10th Cir. 1994); Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969).  Nor is the court required to accept as true legal conclusions that are presented as factual allegations. See Brooks v. Sauceda, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## LAW REGARDING THE FMLA

The FMLA entitles private and government employees to a total of twelve administrative weeks of leave during any twelve-month period under certain specified circumstances, including instances where a serious health condition makes an employee unable to perform the functions of the employee's position.  See 29 U.S.C. § 2612(a)(1); 5 U.S.C. § 6382(a)(1).  The FMLA also ensures that those who take such leave will be restored to their former position or an equivalent one upon returning to work.  See 29 U.S.C. § 2614(a)(1).  "In order to establish a prima facie claim for FLSA or FMLA retaliation, a plaintiff must show that: (1) she engaged in activity protected under either act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."  Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir. 1997)(citing Archuleta v. Colorado Dep't of Institutions, 936 F.2d 483, 486 (10th Cir. 1991)).

### 1.    Individual Liability Under the FMLA.

The FMLA defines "employer" as including "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(1).  The pertinent regulation promulgated under the FMLA refers to the FLSA and states:

An "employer" includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. The definition of "employer" in section 3(d) of the . . . FLSA . . . similarly includes any person acting directly or

indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of FMLA.

29 C.F.R. § 825.104(d).  The FLSA defines "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee ."  29 U.S.C. § 203(d).

The plain meaning of the FMLA evinces an intent to provide for individual liability.

When interpreting the language of a statute, the starting point is always the language of the statute itself.  If the language is clear and unambiguous, the plain meaning of the statute controls.  A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses.

United States v. Quarrell, 310 F.3d 664, 669 (10th Cir. 2002)(quotation omitted).  "Although reasonable arguments could be made that the policy rationale underlying the Title VII decisions finding no individual liability should dictate the same result under the FMLA, the plain language of the statute and the regulations mandate otherwise."  Stubl v. T.A. Sys., Inc., 984 F. Supp. 1075, 1085 (E.D. Mich. 1997).  See Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998) ("This language clearly suggests that individuals are contemplated as defendants under [the FMLA].").

The Tenth Circuit has yet to decide whether there is individual liability under the FMLA; however, a majority of courts that have confronted the issue have found that individuals may be held liable as "employers" under the statute.  Mitchell v. Chapman, 343 F.3d 811, 827 (6th Cir. 2003) (stating that the FMLA extends liability to private-sector employees); Darby v. Bratch, 287 F.3d 673, 680-88 (8th Cir. 2002(comparing the FMLA and FLSA definitions of "employer," and determining that each statute imposes individual liability); Wascura v. Carver, 169 F.3d 683, 685-86 (11th Cir. 1999)(stating that the FMLA provides for individual liability, as it defines "employer" more broadly than Title VII, the ADEA and the ADA).  Courts that have found individual liability under the FMLA have looked to the FLSA for "guidance in construing the term 'employer' as it is

used in the FMLA," given "the fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA." <u>Wascura v. Carver</u>, 169 F.3d at 685-86. <u>See</u> <u>Mitchell v. Chapman</u>, 343 F.3d at 827. <u>See also</u> <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987)(noting the "presumption that similar language in two labor law statutes has a similar meaning").

In determining whether an individual meets the definition of "employee" under the FLSA -- a distinct but related inquiry -- the Tenth Circuit has considered a number of factors. <u>See</u> <u>Johnson v. Unified Gov't of Wyandotte County</u>, 371 F.3d 723, 729 (10th Cir. 2004)(considering five factors as part of an economic-reality test); <u>Henderson v. Inter-Chem Coal Co.</u>, 41 F.3d 567, 570 (10th Cir. 1994)(considering six factors as part of an economic-reality test). In <u>Johnson v. Unified Government of Wyandotte County</u>, the Tenth Circuit interpreted the FLSA to determine whether individuals qualified as "employees" under the statute, and also discussed the term "employer," stating: "The terms 'employ' and 'employer' are given . . . broad but vague definitions." 371 F.3d at 729. The Tenth Circuit also discussed five factors relevant to whether an individual meets the definition of "employee" under the FLSA. According to the Tenth Circuit, a court considers: (i) the degree of control exerted by the alleged employer over the worker; (ii) the worker's opportunity for profit or loss; (iii) the worker's investment in the business; (iv) the permanence of the working relationship; and (v) the degree of skill required to perform the work. <u>See</u> <u>Johnson v. Unified Gov't of Wyandotte County</u>, 371 F.3d at 729 (citing <u>Doty v. Elias</u>, 733 F.2d 720, 722-23 (10th Cir. 1984)). In <u>Henderson v. Inter-Chem Coal Co., Inc.</u>, the Tenth Circuit considered the same five factors plus an additional factor -- "the extent to which the work is an integral part of the alleged employer's business" -- in assessing whether an individual was an "employee" or an "independent contractor" under the FLSA. <u>Henderson v. Inter-Chem Coal Co.</u>,

Inc., 41 F.3d at 570.

Several courts in the Tenth Circuit have held that the FMLA provides for individual liability. See Pinkard v. Lozano, No. 06-CV-02523, 2007 WL 4116019, at *2 (D. Colo. Nov. 16, 2007)(noting many courts have found individual liability under the FMLA, as the FMLA and FLSA rely on similar definitions for "employer"); Pedersen v. W. Petrol. Inc., No. 2:07-CV-997, 2008 WL 977370, at *3 (D. Utah Apr. 8, 2008)(acknowledging that the Tenth Circuit has not decided the issue and joining with courts that have found individual liability under the FMLA); Stuart v. Regis Corp., No. 1:05CV0016, 2006 WL 1889970, at *6 (D. Utah July 10, 2006)(finding no individual liability for complainant's supervisor who had no corporate responsibilities); Williamson v. Deluxe Fin. Servs., No 03-2538, 2005 WL 1593603, at *9 (D. Kan. July 6, 2005)(acknowledging the existence of personal liability under the FMLA); Mondaine v. Am. Drug Stores, Inc., 408 F. Supp. 2d 1169, 1186 (D. Kan. 2006)(holding that the defendant was not individually liable under the FMLA, as he had no corporate role beyond his managerial position).   Although the Tenth Circuit has not yet turned to FLSA case law in interpreting "employer" under the FMLA, it has relied on FLSA case law in interpreting certain other provisions of the FMLA.   See Jordan v. U.S. Postal Service, 379 F.3d 1196 (10th Cir. 1994) (construing the FMLA damages provision based on FLSA case law because of the similarity of the two provisions); Bass v. Potter, 522 F.3d 1098, 1103-04 (10th Cir. 2008)(applying the FLSA's willfulness standard in determining whether certain FMLA violations are "willful" and therefore entitled to an extended statute of limitations)(citing McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)).

    **2.**    **"Employer" and the "Economic Reality" Test Under the FMLA and FLSA.**

Under the FLSA, "to employ" means "to suffer or permit to work," 29 U.S.C.§ 203(g),

and an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C.§ 203(d).  A person must be an"employer" within the meaning of the FMLA and FLSA to be held individually liable under either statute. See 29 U.S.C. § 2611(4)(A)(ii)(I); 29 U.S.C. § 203(d); Isaacowitz v. Dialysis Clinic Inc., No. CIV-09-638 JCH/RHS, Memorandum Opinion and Order, at 11-12 (D.N.M. Feb. 22, 2010) (Herrera, J.).

The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA.  Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 326 (1992); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)("[T]here is in the [FLSA] no definition that solves problems as to the limits of the employer-employee relationship under the Act. . . .  The definition of 'employ' is broad."); Falk v. Brennan, 414 U.S. 190, 195 (1973).

> The statute is a remedial one, written in the broadest possible terms. . . .  It runs counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker, but whose hiring decisions occasionally may be subjected to a third party's veto, to escape compliance with the Act.

Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).

In determining whether an employment relationship exists, for the purposes of federal welfare legislation, courts consider employ an "economic reality" test.  See Tony and Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985).  Courts consider all of the circumstances of the employment relationship, rather than its "technical concepts," to determine whether an employee is subject to the terms of the legislation.  See 471 U.S. at 301.  See also Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 966 (6th Cir. 1991)(holding economic realities indicate that president/co-owner was employer within meaning of the FLSA); Aimable v. Long and Scott Farms, 20 F.3d 434, 439 (11th Cir. 1994)(holding that the "economic reality" of all the circumstances and

not the common-law definitions determine whether an employer/employee relationship exists); 29 C.F.R. § 779.19.  Whether an employment relationship exists for the purposes of the FLSA turns on the "economic reality" of the working relationship.  Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961).  See Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d at 570.

Although the Tenth Circuit has not addressed whether supervisors may be held liable as "employers" under the FMLA or the FLSA, it has noted that determinations about employment relationships are "not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'"  Baker v. Flint Eng'g & Const. Co. ,137 F.3d 1436, 1440 (10th Cir. 1998)(quoting Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d at 570).  See Johns v. Stewart, 57 F.3d 1544, 1557 (10th Cir. 1995)("Because the definition of 'employee' under the FLSA is broad, but not precise, courts apply the Supreme Court's 'economic reality' test to determine the scope of employee coverage under the FLSA")(citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28 at 33).  In Baker v. Flint Engineering & Construction Co., a group of rig welders in the natural-gas pipeline-construction industry filed suit against Flint Engineering and Construction Company for overtime compensation under the FLSA.  Applying a six factor "economic-reality" test, the Tenth Circuit affirmed the district court's holding that the welders were "employees" and not independent contractors under the FLSA.  Baker v. Flint Eng'g & Const. Co., 137 F.3d at 1440.  The Tenth Circuit went on to discuss factors relevant in determining whether an individual is an "employer," stating: "The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records."  Id. (citing Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990); Carter v. Dutchess Cmty. Coll., 735 F.2d at 12).  "Th[e] [economic-reality] test is based upon the totality

-16-

of the circumstances, and no one factor in isolation is dispositive."  Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d at 570 (applying economic-reality test to determine if individual was an employee under the FLSA)(citing Dole v. Snell, 875 F.2d 802, 805 (10th Cir. 1989)).

In Fernandez v. Mora San Miguel Electric Cooperative, 462 F.3d 1244 (10th Cir. 2006), the Tenth Circuit reaffirmed its adoption of the economic-reality test to determine whether an individual is an "employer."  In that case, the inquiry was whether an entity constituted an "employer" under the EPPA.  The Tenth Circuit noted that the EPPA and the FLSA define "employer" using identical language, and held that a person or entity that "exerts some degree of control over the employer's compliance with EPPA" qualifies as an "employer."  462 F.2d at 1248.  The Tenth Circuit explained:

> The [economic-reality] test . . . stems from cases interpreting the Fair Labor Standards Act, which defines "employer" the same way as the EPPA.  See id. at 252. . . . Given Congress's use of the same language in defining the term "employer" in the two statutes, and because we agree with the reasoning of the other courts that have adopted this test, we approve using the economic reality test in evaluating whether a polygraph examiner is an "employer" for purposes of EPPA.

462 F.2d at 1248.

Several other circuits and numerous district courts have explored the outer limits of the definition of "employer."  The United States Court of Appeals for the First Circuit has found that a corporate officer with operational control over payroll is an "employer" under the FLSA and is individually liable for wage violations.  Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983).  The United States Court of Appeals for the Fifth Circuit has found that a person who "effectively dominates [the] administration or otherwise acts, or has the power to act, on behalf of the corporation" falls within the definition as well.  Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir. 1983).  To be an employer, an individual need not have an ownership interest or

control of day-to-day operations.  See Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993).  "The FLSA imposes liability on an individual officer . . . because that individual has 'substantial control of the terms and conditions of the [employee's] work' or 'operational control,' or 'effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.'"  Solis v. Universal Project Mgmt., Civ. No. H-08-1517, 2009 WL 4043362 at *6 (S.D. Tex. Nov. 19, 2009).  "The term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work.'"  Lee v. Coahoma County, 937 F.2d 220, 226 (5th Cir. 1991)(quoting Falk v. Brennan, 414 U.S. at 194).  See Pedersen v. Western Petroleum, Inc., 2008 WL 977370, at *3 ("[T]he test for liability is whether the defendant had the ability to control, in whole or in part, whether the plaintiff could take a leave of absence and return to the position.")(quoting Oby v. Baton Rouge Marriott, 329 F. Supp. 3d 772, 799 (M.D. La. 2004)); Stuart v. Regis Corp., 2006 WL 1889970, at *6 ("Individuals who have no corporate role beyond a managerial position are not employers under the FMLA.").

Courts consider a variety of factors in assessing employment relationships, but note that it is important to "avoid having the [economic-reality] test confined to a narrow legalistic definition." Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 139 (2d Cir. 1999)(considering a number of factors, including but not limited to the four factors listed in Baker v. Flint Engineering & Construction Co.). See Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 72 (2d Cir. 2003)(stating that precedents do not require an exclusive four factor test and that courts are permitted to consider any other factors they deem relevant to the economic realities calculus). In Moldenhauer v. Tazewell-Pekin Consolidated Communications Center, 536 F.3d 640, 644 (7th Cir. 2008), the United States Court of Appeals for the Seventh Circuit discussed the scope of "joint-employer" liability under the

-18-

FMLA, stating:

> In assessing the amount of control an employer exercised over an employee, other courts have addressed various factors such as whether the alleged employer "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records.". . . [W]e decline to so limit our review in this case or subsequent cases.  Although these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the only relevant factors, or even the most important. . . . Rather, we hold generally that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case.

536 F.3d at 644(internal citation omitted).

Some courts have focused on a defendant's ability to exercise supervisory authority over a complaining employee.  See, e.g., Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)("The word 'employer' is defined broadly enough . . . to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.").  Others have analyzed whether the defendant exercised control over the plaintiff's ability to take a leave of absence and to return to work.  See Freemon v. Foley, 911 F. Supp. 326, 332 (N.D. Ill. 1995)(holding that employees, who were not directors or officers in the company, who recommended suspension and termination and informed the employee of her termination, were employers under the FMLA); Bryant v. Delbar Prods., Inc., 18 F. Supp. 2d 799, 808 (M.D. Tenn. 1998)(holding manager who was assigned "personnel responsibilities" and who was directed to fire complainant was an employer); Rupnow v. TRC, Inc., 999 F. Supp. 1047, 1048 (N.D. Ohio 1998)(denying motion to dismiss and holding the weight of authority favors individual liability for a supervisor where the supervisor exercises sufficient control over the plaintiff's ability to take

protected leave)(internal citations omitted); <u>Carpenter v. Refrigeration Sales Corp.</u>, 49 F. Supp. 2d 1028, 1031 (N.D. Ohio 1999)(granting summary judgment against head of human resources department who administered FMLA, spoke to employee about her illness, and signed employee's termination letter; <u>Holt v. Welch Allyn, Inc.</u>, No. 95-CV01135, 1997 WL 210420, at *8 (N.D.N.Y. April 15, 1997)(denying supervisors' motions to dismiss complaint containing allegations that supervisors failed to recognize that broken tooth and pregnancy were serious medical conditions); <u>Williamson v. Deluxe Fin. Services</u> 2005 WL 1593603, at *9 (holding that a supervisor and human resources manager did not have sufficient responsibility or stature within the company to warrant a finding of personal liability at summary judgment under the FMLA).

Corporate officers who have a substantial ownership interest in the corporation, and who are directly involved in decisions affecting employee compensation, may be held personally liable under the FLSA. <u>See</u> <u>Donovan v. Agnew</u>, 712 F.2d at 1513. "Cases interpreting § 203(d) of the FLSA have held that a person who has the authority to hire and fire may be considered an employer." <u>McKiernan v. Smith-Edwards-Dunlap Co.</u>, 1995 WL 311393, at *3. <u>See</u> <u>Brock v. Hamad</u>, 867 F.2d 804, 808 n.6 (4th Cir. 1989)(noting defendant qualified as employer, as it was not disputed that he hired and directed the employees who worked for the enterprise); <u>Brunelle v. Cytec Plastics, Inc.</u>, 225 F. Supp. 2d 67, 81 (D. Me. 2002)(holding production supervisor was not individually liable under the FMLA, as there was no evidence that he had the power to hire and fire, determined the rate and method of payment, or maintained employment records); <u>Johnson v. A.P. Prods., Ltd.</u>, 934 F. Supp. 625, 629 (S.D.N.Y 1996)(dismissing claim against individual defendant because complaint alleged only that the defendant was a manager, and that she and the defendant company fired plaintiff).

## LAW REGARDING THE NMHRA

The NMHRA allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355-56 (1994)(affirming the trial court's dismissal of defendants, "[s]ince [the plaintiff] ha[d] not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act").  The Supreme Court of New Mexico and the New Mexico Court of Appeals have consistently held that "full compliance with NMHRA grievance procedures [is] a prerequisite to filing [an NMHRA] claim in district court."  Sabella v. Manor Care, Inc., 121 N.M. 596, 598, 915 P.2d 901, 903 (1996).  See Luboyeski v. Hill, 117 N.M. at 382, 872 P.2d at 355; Jaramillo v. J.C. Penney Co., 102 N.M. 272, 273, 694 P.2d 528, 529 (Ct. App. 1985).  Under these authorities, the timely filing of a notice of appeal from an NMHRA administrative order is "effective to give the district court jurisdiction to try the case de novo" under NMSA 1978, § 28-1-13.  Linton v. Farmington Mun. Schs., 86 N.M. 748, 750, 527 P.2d 789, 791 (1974).  See Sabella v. Manor Care, Inc.,121 N.M. at 599, 915 P.2d at 904 (allowing a person to maintain her NMHRA claim in district court based on the fact that she had requested and received an order of non-determination from the NMHRD).

"Under the NMHRA, a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party . . . ."  Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001).  The Supreme Court of New Mexico has noted that failure to exhaust administrative remedies deprives the court of subject-matter jurisdiction.  See Mitchell-Carr v. McLendon, 127 N.M. 282, 286, 980 P.2d 65, 71 (1999); Angel Fire Corp. v. C.S. Cattle Co., 96 N.M. 651, 652, 634 P.2d 202, 203 (1981)("Jurisdiction of the matters in dispute does not lie in the courts until the statutorily required administrative procedures are fully complied with.").

-21-

In Morris v. ADC Telecommunications, Inc., No. EP-09-CV-242-KC, 2009 WL 3536688 (W.D. Tex. Oct. 23, 2009), the Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, noted that "failure of administrative exhaustion for claims made under the NMHRA has been characterized by the New Mexico Supreme Court as affecting subject-matter jurisdiction." 2009 WL 3536688, at *2 n.2.  See Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1214 (D.N.M. 2004)(Browning, J.)(stating that "[b]efore a plaintiff can state a valid claim against an individual defendant under NMHRA . . . the plaintiff must first exhaust her administrative remedies.").

## ANALYSIS

The Plaintiffs' Complaint alleges claims under the ADA, the NMHRA, and the FMLA, and claims for retaliatory discharge under New Mexico common law and for punitive damages. R. Saavedra brings claims solely under the FMLA and under New Mexico common law.  Burrows moves the Court to dismiss the claims against her because she argues that she is not a proper defendant under these causes of action.  The Court will grant the motion in part and deny the motion in part.

## I.      THE COURT WILL DISMISS THE ADA CLAIM AGAINST BURROWS.

Burrows moves the Court to dismiss the Plaintiffs' ADA claim because she argues that there is no individual liability under the ADA.  The Court agrees that Burrows does not qualify as an employer under the ADA's definition and is therefore not subject to individual liability under the ADA.[2]  See Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999)("The ADA

_____

[2] The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees . . . , and any agent of such person." 42 U.S.C. § 12111(5)(A).  The ADA's definition mirrors the definitions of "employer" in Title VII of the Civil Rights Act of 1964 and in the Age Discrimination in Employment Act ("ADEA").  See 42 U.S.C. § 2000e(b);

precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."). See Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996); E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995). In their response brief, the Plaintiffs concede that they have no claims against Burrows under the ADA. See Response at 7 ("Plaintiffs concede that they have no claims against Lucy Burrows individually under [the] Americans With Disabilities Act."). The Court will therefore dismiss the Plaintiffs' ADA claim in Count I against Burrows.

## II.     THE COURT WILL DISMISS THE NMHRA CLAIM AGAINST BURROWS.

Burrows also moves the Court to dismiss the Plaintiffs' NMHRA claim asserted against her, because the Plaintiffs' failed to mention Burrows in L. Saavedra's charge of discrimination filed with the NMHRD. Burrows argues that the Plaintiffs therefore failed to exhaust the administrative remedies with the NMHRD. The NMHRA allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies. See Luboyeski v. Hill, 117 N.M. at 382, 872 P.2d at 355-56 ("Since [the plaintiff] has not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act, we affirm the trial court's order dismissing those defendants."). "[E]xhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the court lacks subject-matter jurisdiction." Mitchell-Carr v. McLendon, 127 N.M. at 286,

---

29 U.S.C. § 630(b). The Tenth Circuit has stated that it "can discern no meaningful distinction between the definitions of 'employer' in Title VII and the ADA," and therefore has relied on precedent holding that an individual supervisor may not be held personally liable under Title VII to find that the ADA precludes personal capacity suits. Butler v. City of Prairie Village, 172 F.3d at 744 (citing Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996)). See E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d at 1279-80 ("Courts routinely apply arguments regarding individual liability to all three statutes interchangeably.").

980 P.2d at 71.  <u>See</u> <u>Kelley v. City of Albuquerque</u>, 375 F. Supp. 2d at 1213-14 (stating that individual defendants cannot be sued in New Mexico state district courts under the NMHRA unless the complainant exhausts administrative remedies against those defendants)(quoting <u>Luboyeski v. Hill</u>, 117 N.M. at 382, 872 P.2d at 355)(internal quotations omitted).  The Plaintiffs "concede that they have no claims against Lucy Burrows individually under . . . the New Mexico Human Rights Act."  Response at 7.  Because the Plaintiffs failed to exhaust their administrative remedies and, moreover, because they concede they do not have a viable claim against Burrows under the NMHRA, the Court will dismiss the NMHRA claim in Count II against Burrows.

## III.   THE   COURT   WILL   DISMISS   THE   PLAINTIFFS'   COMMON-LAW, <u>RETALIATORY DISCHARGE CLAIM AGAINST BURROWS</u>.

Burrows moves the Court to dismiss the Plaintiffs' retaliatory discharge claim, arguing that she cannot be held individually liable because she was not acting outside the course of her employment.  To recover for retaliatory discharge, an employee "must demonstrate that he [or she] was discharged because he [or she] performed an act that public policy has authorized or would encourage, or because he [or she] refused to do something required of him by his employer that public policy would condemn."   <u>Vigil v. Arzola</u>, 102 N.M. 682, 689, 699 P.2d 613, 620 (Ct. App. 1983), <u>rev'd</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u>, 101 N.M. 687, 687 P.2d 1038 (1984), <u>overruled</u> <u>in</u> <u>part</u> <u>by</u> <u>Chavez v. Manville Prods. Corp.</u>, 108 N.M. 643, 649, 777 P.2d 371, 377 (1989).  <u>See</u> <u>Silva</u> <u>v. Am. Fed'n of State, County and Mun. Employees</u>, 131 N.M. 364, 366, 37 P.3d 81, 83 (2001)(reaffirming that retaliatory discharge claims are limited to those situations where the employee's discharge results from the employer's violation of a clear public policy).  An individual may not be held liable for retaliatory discharge if there is no evidence in the record that the individual acted outside the course and scope of his or her employment.  <u>See</u> <u>Bourgeous v. Horizon</u>

Healthcare Corp., 117 N.M. 434, 438, 872 P.2d 852, 856 (1994)(stating that "it is difficult to see how a retaliatory discharge cause of action would apply to the individual defendants acting in the course and scope of their employment.").   If a corporation is an individual's employer, only the corporation may discharge the employee.   See id. ("A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation.").   The Court agrees that Burrows may not be held individually liable for retaliatory discharge because the Complaint does not allege that she was acting outside the scope and course of her employment.   At the hearing, Mr. Montoya conceded that the Court should dismiss the retaliatory discharge claim against Burrows.   Because there are no allegations that Burrows acted outside the scope of her employment, and because Mr. Montoya conceded that the Court should dismiss the claim, the Court grants the motion to dismiss the Plaintiffs' claim in Count IV for retaliatory discharge against Burrows.

## IV.   THE COURT WILL DISMISS R. SAAVEDRA'S FMLA CLAIM AGAINST BURROWS.

In Count III, both R. Saavedra and L. Saavedra assert claims against Burrows under the FMLA.   The Complaint, however, does not plead facts regarding R. Saavedra's employment relationship with Burrows.   At the hearing, Ms. Mann stated that R. Saavedra worked at a different Lowe's location.   See Tr. at 6:24 - 7:1 (Mann).   The Court inquired whether Mr. Montoya would oppose dismissing R. Saavedra's FMLA claim against Burrows, and Mr. Montoya stated that he was not opposed, given that R. Saavedra did not qualify as an employee of Burrows.   See Tr. at 13:9-22 (Court, Montoya).   Because the Plaintiffs did not allege R. Saavedra was under Burrows' supervisory control, the Court will dismiss R. Saavedra's FMLA claim in Count III against Burrows.

## V.     L. SAAVEDRA HAS ADEQUATELY PLED A CLAIM AGAINST BURROWS UNDER THE FMLA.

Burrows argues that individuals may be held liable under the FMLA only in cases where they have direct supervisory authority to hire and fire the FMLA-protected employee in question.  She further argues that the allegations in the Complaint are insufficient, as a matter of law, to qualify her as a supervisory employee with authority to hire and fire employees, to supervise or control employee work schedules or conditions of employment, or to determine the rate and methods of employee payment.  L. Saavedra argues that the plain language of the statute and the existing case law clearly establish individual liability, and that, although not every employee of Lowe's would be subject to FMLA liability, Burrows, as human-resources officer, was directing and controlling an adverse employment action against L. Saavedra, making Burrows subject to liability under the FMLA.  The Court finds that L. Saavedra has adequately pled a claim in Count III against Burrows under the FMLA, and thus denies the motion to dismiss this claim.

### A.     THE COURT WILL APPLY THE ECONOMIC-REALITY TEST TO DETERMINE WHETHER BURROWS IS AN EMPLOYER UNDER THE FMLA.

Under the FMLA, "employer . . . includes -- any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(1).  The breadth of the statute's plain language suggests that almost any person who "acts . . . in the interest of the employer" as to "any of the employees" would qualify as an "employer."  Id.  Under the statute, and given the allegations of the Complaint, Burrows could be an employer as to L. Saavedra.  See Complaint ¶¶ 20, 21, 23, at 6.  See Morrow v. Putnam, 142 F. Supp. 2d 1271, 1276 (D. Nev. 2001)(stating that "[t]he plain meaning of [the FMLA] . . . allows employees to sue supervisory personnel who acted in the interest of an employer to any of

the employees of such employer.")(internal quotation omitted); <u>Sheaffer v. County of Chatham</u>, 337 F. Supp. 2d 709, 728 (M.D.N.C. 2004)(stating that "[t]he simplest reading of the statutory text compels the conclusion that public employees who act, directly or indirectly, in the interest of the public agency for which they work, may be held individually liable under the FMLA.").

The courts and the United States Department of Labor have given the statute more definition. The pertinent regulation promulgated under the FMLA refers to the FLSA and states, "as under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of the FMLA." 29 C.F.R. § 825.104(d). The Tenth Circuit has yet to address whether there is individual liability under the FMLA; however, a majority of courts that have confronted the issue have found that individuals may be held liable as "employers" under the statute. <u>See Darby v. Bratch</u>, 287 F.3d at 680-81; <u>Mitchell v. Chapman</u>, 343 F.3d at 827; <u>Pedersen v. Western Petroleum, Inc.</u>, 2008 WL 977370, at *3.

The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. <u>Nationwide Mut. Ins. Co. v. Darden</u>, 503 U.S. at 326; <u>Rutherford Food Corp. v. McComb</u>, 331 U.S. at 730.

> The statute is a remedial one, written in the broadest possible terms. . . . It runs counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker, but whose hiring decisions occasionally may be subjected to a third party's veto, to escape compliance with the Act.

<u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d at 12. Because the statutory definition of employer in the FMLA is materially identical to the definition contained in the FLSA, courts have turned to FLSA case law in interpreting the term. <u>See Wascura v. Carver</u>, 169 F.3d at 686 ("The fact that Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for construing the term

-27-

'employer' as it is used in the FMLA."); Pinkard v. Lozano, 2007 WL 4116019, at *2 (noting numerous courts that have found individual liability, as the FMLA and FLSA rely on similar definitions for "employer.").

Although the Tenth Circuit has not addressed whether supervisors may be held liable as "employers" under the FMLA or the FLSA, it has discussed factors relevant in determining when an individual qualifies as an employer or an employee. See Baker v. Flint Eng'g & Const. Co., 137 F.3d at 1440. The four factors that the Tenth Circuit has enunciated are: (i) whether the alleged employer has the power to hire and fire employees; (ii) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (iii) whether the alleged employer determines the rate and method of payment; and (iv) whether the alleged employer maintains employment records. See id. (citing Watson v. Graves, 909 F.2d at 1553). The Tenth Circuit refers to these factors as the economic-reality test. See Fernandez v. Mora San Miguel Elec. Coop. 462 F.3d at 1248. (reaffirming the Tenth Circuit's adoption of the economic-reality test for use in determining whether an individual qualifies as an employer). "Th[e] [economic-reality] test is based upon the totality of the circumstances, and no one factor in isolation is dispositive." Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d at 570. See Herman v. RSR Sec. Servs., Ltd., 172 F.3d at 139 (stating that it is important to "avoid having the [economic-reality] test confined to a narrow legalistic definition."); Zheng v. Liberty Apparel Co., Inc., 355 F.3d at 72 (stating that courts are permitted to consider any other factors they deem relevant to the economic realities calculus).

While the Court believes the statute's plain language answers whether Burrows is an employer as to L. Saavedra, the Court will also consider the four factor test in Baker v. Flint Engineering & Construction Co. in determining whether Burrows qualifies as an employer under the FMLA. Courts have placed some emphasis on the first of the factors, finding liability in cases

where the defendants have the power to hire and fire.  See Brock v. Hamad, 867 F.2d at 808 n.6 (noting defendant qualified as employer, as it was not disputed that he hired and directed the employees who worked for the enterprise); Bryant v. Delbar Prods., Inc., 18 F. Supp.2d at 808 (holding manager who was assigned "personnel responsibilities" and who was directed to fire complainant was an employer); Johnson v. A.P. Prods., Ltd., 934 F. Supp. at 629 (dismissing claim against individual defendant because complaint alleged only that the defendant was a manager, and that she and the defendant company fired plaintiff).  Courts have also used the second factor in determining whether the defendants exercised substantial control over complainants, weighing a defendant's ability to exercise supervisory authority or control over a plaintiff's ability to take a leave of absence and return to work.  See Riordan v. Kempiners, 831 F.2d at 694; Rupnow v. TRC, Inc., 999 F. Supp. at 1048 (holding the weight of authority favors individual liability for a supervisor who exercised sufficient control over employee's ability to take protected leave)(internal citations omitted); Carpenter v. Refrigeration Sales Corp., 49 F. Supp.2d at 1031 (granting summary judgment against head of human-resources department who administered FMLA, spoke to employee about her illness, and signed employee's termination letter); Holt v. Welch Allyn, Inc., 1997 WL 210420, at *8 (denying supervisors' motions to dismiss based on allegations that supervisors failed to recognize that broken tooth and pregnancy were serious medical conditions); Williamson v. Deluxe Fin. Services, 2005 WL 1593603, at *9 (holding that supervisor and human-resources manager did not have sufficient responsibility or stature within the company to warrant a finding of personal liability under the FMLA).

The Court has reviewed the Tenth Circuit's discussion in Baker v. Flint Engineering & Construction Co. and other cases addressing the employer issue, and agrees with the parties that the Tenth Circuit would likely find that the economic-reality test is appropriate in determining whether

an individual qualifies as an employer.  The Court will thus, in addition to plainly reading the statute's language,  apply the economic-reality test to determine whether the facts pled in the Complaint support the contention that Burrows qualifies as an employer under the FMLA.  The Court will use the four factors that the Tenth Circuit outlined in Baker v. Flint Engineering & Construction Co.

### B.    THE PLAINTIFFS SUFFICIENTLY PLED L. SAAVEDRA'S CLAIM UNDER THE FMLA AGAINST BURROWS.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under rule 8(a)(2) of the Federal Rules of Civil Procedure.  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(quotation marks and citation omitted), cert. denied, 130 S. Ct. 1142 (2010).  See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'")(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).  A motion to dismiss requires that the court determine, while construing all well-pleaded factual allegations as true and taking all reasonable inferences from the pleadings in favor of the plaintiffs, whether the complaint states a cause of action for which relief can be granted. See Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006).  The plaintiff must frame their complaint "with enough factual matter (taken as true) to suggest that . . . she is entitled to relief." Robbins v. Oklahoma, 519 F.3d at 1247.

Burrows does not introduce any additional statements of fact, but contends that the "plaintiffs' meager allegations do not suggest . . . that she had the authority to hire and fire

employees, that she supervised or controlled employee work schedules or conditions of employment, nor that she determined the rate and methods of payment." Burrows' Supp. at 2-3. Burrows relies on Does v. Rodriguez, No. 06-CV-00805, 2007 WL 684117 (D. Colo. Mar. 2, 2007), and cites language addressing factors supporting a finding of personal liability for corporate officers under the FLSA. In Does v. Rodriguez, the Honorable Lewis T. Babcock, Chief United States District Judge for the District of Colorado, denied the defendant's motion to dismiss, holding that the plaintiffs' burden was only to demonstrate that they could prove a set of facts that would show the defendant was an employer. See Does v. Rodriguez, 2007 WL 684117, at *5. See also Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403 (M.D. Pa. 1999)(holding that the plaintiff presented sufficient facts, in the form of a termination letter with defendant's signature, to support her claim that the defendant was her "employer" under the FMLA, and that additional discovery was necessary to determine the extent of defendant's control over the terms and conditions of plaintiff's employment); Smith v. Univ. of Chicago Hosp., No. 02 C 0221, 2003 WL 2275775, at *7 (N.D. Ill. Nov. 20, 2003)(denying motion to dismiss and stating that the defendant, who was the plaintiff's supervisor, may be held liable if the plaintiff produces evidence to show that the defendant was at least partially responsible for the alleged violation).

Burrows cites to some authority outside the Tenth Circuit supporting the argument that the economic-reality analysis does not impose individual liability in cases where allegations are insufficient to prove that defendants are managerial or supervisory employees with the requisite authority over complainants. These cases, however, did not dismiss FMLA claims under rule 12 but rather were decided after the factual record was much more developed. See Baystate Alternative Staffing v. Herman, 163 F.3d 668, 678 (1st Cir. 1998)(reviewing a final administrative determination by the Department of Labor's Administrative Review Board, and stating that an

individual's control over purse-strings and corporate policy regarding compensation practices are relevant in determining whether an individual is an employer under the FLSA); Solis v. Universal Project Mgmt., 2009 WL 4043362, at **6-7 (denying motion for summary judgment where the defendants declared only that they did not personally employ or enter into contracts with claimants, and that all actions were taken on behalf of the company).

The Complaint alleges that Burrows "was employed in a managerial capacity," see Complaint ¶ 4, at 2,  and it is a reasonable inference that L. Saavedra, who reported to Burrows regarding her FMLA leave, was under Burrows' purview, see id. ¶¶ 20, 21, 23, at 6.  The Plaintiffs allege that Burrows had the authority to hire and fire employees, and that, at least to a degree, she supervised or controlled employee work schedules or conditions of employment.  The Plaintiffs allege that Burrows changed L. Saavedra's leave status, see id. ¶ 20, at 6, that Burrows refused to accept a note from L. Saavedra's doctor releasing her to work, see id. ¶ 21, at 6, and that Burrows told L. Saavedra that she was terminated, see id. ¶ 23, at 6.  The Court believes that the Plaintiffs' allegations are specific enough to satisfy the rule 8 pleading requirements, and sufficient to satisfy the factors set forth in the economic-reality test.  See Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The Plaintiffs have alleged specific facts regarding Burrows' control of the nature and duration of L. Saavedra's leave and of Burrows' ability to fire L.  Saavedra.  See Riordan v. Kempiners, 831 F.2d at 694; Bryant v. Delbar Prods., Inc., 18 F. Supp. 2d at 808; Rupnow v. TRC, Inc., 999 F. Supp. at 1048; Carpenter v. Refrigeration Sales Corp., 49 F. Supp. 2d at 1031; Holt v. Welch Allyn, Inc., 1997 WL 210420, at *8; Williamson v. Deluxe Fin. Servs., 2005 WL 1593603, at *9; Brock v. Hamad, 867 F.2d at 804; Johnson v. A.P. Prods., Ltd., 934 F. Supp. at  629; Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d at 81.

The Plaintiffs do not allege that Burrows determined the rate and method of payment for L. Saavedra, which would satisfy the third factor, or that Burrows maintained employment records, which would satisfy the fourth factor.  The Plaintiffs are not required to satisfy all four factors to establish that Burrows is an employer under the FMLA.  See Zheng v. Liberty Apparel Co., Inc., 355 F.3d at 72 (affirming holding of individual liability where the record supported at least three of the four factors); Herman v. RSR Sec. Servs., Ltd., 172 F.3d at 139 (stating that it is important to "avoid having the [economic-reality] test confined to a narrow legalistic definition.").  Moreover, a reasonable inference is that, given that Burrows managed L. Saavedra's leave and informed her of her termination, Burrows probably had at least knowledge of and/or influence in determining L. Saavedra's  rate and method of payment, and probably made at least some decisions regarding L. Saavedra's employment.  Although the Plaintiffs directly satisfy only two of the Tenth Circuit's four factors, the Court believes that, viewing the facts in the light most favorable to the Plaintiffs, the allegations are sufficient, given the Tenth Circuit's economic-reality test, to defeat the motion to dismiss.  Taking the allegations as true, as the Court must on a motion to dismiss, Burrows' actions, as alleged in the Complaint, constitute the exercise of supervisory authority over L. Saavedra.

Because the FMLA provides for individual liability, and the Plaintiffs have pled sufficient facts to demonstrate that Burrows qualifies as an "employer" under the FMLA, the Court will deny the motion to dismiss Count III against Burrows.

## VI.   THE COURT WILL DISMISS L. SAAVEDRA'S PUNITIVE DAMAGES CLAIM AGAINST BURROWS.

The Plaintiffs' Complaint, in Count V, seeks punitive damages.  The sole claim remaining against Burrows is L. Saavedra's claim under the FMLA.  Section 2617 of Title 29 of the United

States Code provides, in relevant part:

> 1) Liability. Any employer who violates section 105 [29 USCS § 2615] shall be liable to any eligible employee affected--
>
>> (A) for damages equal to--
>>
>>> (i) the amount of--
>>>
>>>> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>>>>
>>>> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 102(a)(3) [29 USCS § 2612(a)(3)]) of wages or salary for the employee;
>>>
>>> (ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
>>>
>>> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause(ii), except that if an employer who has violated section 105 [29 USCS § 2615] proves to the satisfaction of the court that the act or omission which violated section 105 [29 USCS § 2615] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 105 [29 USCS § 2615], such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and
>>
>> (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1).

In passing the Civil Rights Act of 1991, Congress provided for compensatory and punitive damages in a Title VII action and an American with Disabilities action, see 42 U.S.C. § 1981a; however, two years later, Congress did not provide for punitive damages when it enacted the FMLA,

see 29 U.S.C. § 2617.  In Nevada Department of Human Resources v. Hibbs, 538 U.S. 721, 735

(2003), a case which held that the FMLA was "narrowly targeted" at "sex-based overgeneralization"

and was thus a "valid exercise of its power under Section 5 of the Fourteenth Amendment," the

Supreme Court noted that the remedial provisions of the statute are narrow, explaining: "We also

find significant the many other limitations that Congress placed on the scope of this measure . . . .

[T]he cause of action under the FMLA is a restricted one: The damages recoverable are strictly

defined and measured by actual monetary losses . . . ."  538 U.S. at 738-40.

     The canons of statutory construction support the conclusion that the FMLA does not provide

for punitive damages.  Section 2617 of Title 29 of the United States Code specifies what damages

are available, and punitive damages are not included.  Where Congress has included certain means

of recovery, the doctrine of *expressio unis est exclusio alterius* discourages judicial recognition of

additional means.[3]     See Walker v. United Parcel Service, Inc., 240 F.3d 1268, 1277

(10th Cir. 2001)(stating that, "[b]ecause recovery is . . . unambiguously limited to actual monetary

losses,  courts  have  consistently  refused  to  award  FMLA  recovery  for  such  other  claims  as

---

     [3] The Court notes that punitive damages are awarded under 42 U.S.C. § 1983, when "the
defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless
or callous indifference to the federally protected rights of others" despite the lack of explicit
statutory language authorizing such recovery.  Smith v. Wade, 461 U.S. 30, 56 (1983).  Section 1983
"was intended to create 'a species of tort liability' in favor of persons deprived of federally secured
rights."  Smith v. Wade, 461 U.S. at 30 (internal citation omitted).  Because the statutory language
and the legislative history lacked specific guidance regarding remedies, the Supreme Court looked
to the common law of torts for instruction.  See Smith v. Wade, 461 U.S. at 30.  See also Memphis
Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986)(stating that the amount of the recovery in
a § 1983 action is not capped by statute but rather "ordinarily determined according to principles
derived from the common law of torts"); Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 485
(W.D. Pa. 2008)(stating that "the remedial scheme created by the FMLA is far more restrictive than
that of § 1983.").  The Supreme Court's reasoning in Smith v. Wade is not applicable in this case,
as Congress included specific means of recovery in the statutory language of the FMLA.

consequential damages and emotional distress damages.")(internal citations omitted); Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1007 (6th Cir. 2005)(stating that, "[b]ecause the FMLA specifically lists the types of damages that an employer may be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee such as salary and benefits and certain liquidated damages, the FMLA does not permit recovery for emotional distress."); Brown v. Nutrition Mgmt. Servs. Co., 370 Fed. Appx. 267, 270 (3d Cir. 2010)(upholding order for new trial because the jury instructions may have misled the jury into believing that punitive damages were recoverable under the FMLA); Jakischa v. Centr. Parcel Express, 106 Fed. Appx. 436, 440 (6th Cir. 2004)(noting the FMLA does not provide for punitive damages); Settle v. S.W. Rodgers, Co., Inc., 998 F. Supp. 657, 666 (E.D. Va. 1998)("[B]y its own terms, the FMLA does not provide for either punitive damages or for damages for emotional distress."), aff'd 182 F.3d 909 (4th Cir. 1999); Collins v. OSF Healthcare Sys., 262 F. Supp. 2d 959, 963 (C.D. Ill. 2003)(stating that "it is well-established that punitive damages are not available under the [FMLA]."); Keene v. Rinaldi, 127 F. Supp. 2d 770, 771 (M.D.N.C. 2000)("The explicit language of the FMLA does not mention punitive damages," and "the presence of the liquidated damages subsection suggests that the drafters of the Act included that subsection in lieu of allowing punitive damages."). See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000)(stating that, "when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.")(internal citation omitted); Roberts v. Progressive Indep., Inc., 183 F.3d 1215, 1223 (10th Cir. 1999)(stating that "Congress did not write § 794 into the damages scheme of § 1981a, and we refuse to do so through creative statutory construction.").

    The statutory language on remedies for FMLA claims lists particular compensatory remedies

-- damages for lost wages, salary, employment benefits, and other compensation and interest.  In addition to this compensatory relief, a court must award double the amount of any damages under the FMLA, as liquidated damages, unless the defendant persuades the court that the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of the FMLA.  See 29 U.S.C. § 2617(a)(1).  Like the other damages recoverable under the FMLA, the liquidated damages provision provides for compensatory, not punitive, relief. See Jordan v. U.S. Postal Service, 379 F.3d at 1200 (construing the FMLA damages provision based on FLSA case law, because of the similarity of the two provisions, and holding that "[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA")(internal citation omitted).  See also Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)(stating that "the liquidated damage provision [of the FLSA] is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.")(internal citation omitted).  "By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 414 (2003).  Because the FMLA specifies a number of forms of compensatory relief, all intended to make the plaintiff whole, punitive damages would be out of place in the statute's remedial scheme.  The Court should not write a remedy into the statute that, it appears, Congress consciously and intentionally did not include; the structure does not suggest the omission was an oversight.

Because Congress did not write punitive damages into the remedial scheme of the FMLA and instead limited recovery to certain compensatory damages, the Court finds that punitive damages are not available under the statute.  Moreover, at the hearing, the Court inquired whether

Mr. Montoya would oppose dismissing the punitive damages claim against Burrows, and Mr. Montoya stated that he was not opposed.  See Tr. at 2:20-3:6 (Court, Montoya).  As the sole claim remaining against Burrows is L. Saavedra's FMLA claim, the Court will dismiss Count V asserted against Burrows.

**IT IS ORDERED** that Lucy Burrows' Memorandum Motion to Dismiss All Claims is granted in part and denied in part.  The Court will dismiss Counts I, II, IV, and V asserted against Defendant Lucy Burrows.  The Court will also dismiss Plaintiff Robert Saavedra's claim against Burrows in Count III.  The Court denies the motion to dismiss Plaintiff Louise B. Saavedra's claim in Count III.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

  *Attorney for the Plaintiffs*

Lisa Mann
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

  *Attorneys for the Defendants*